**BLUESTAR ENERGY, INC. and Sois Operating Company, Appellants**

v.

**Bill W. MURPHY and Bill W. Murphy Operating Company, Inc., Appellees.**

**No. 11–04–00255–CV.**

Court of Appeals of Texas, Eastland.

Oct. 12, 2006.

Rehearing Overruled Dec. 6, 2006.

Roy B. Longacre, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, L.L.P., Abilene, for appellants.

John A. (Jad) Davis Jr., Brandy R. Manning, Davis, Gerald & Cremer, P.C., Midland, for appellees.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

Bill W. Murphy and Bill W. Murphy Operating Company, Inc. (plaintiffs) brought suit against Bluestar Energy, Inc. and SOIS Operating Company (defendants) after a dispute arose in their business relationship. Defendants filed a counterclaim. The jury found in favor of the plaintiffs, and the trial court entered judgment on the verdict awarding actual damages of $6,055.51, declaring various rights and duties of the parties, and awarding attorney's fees of $50,000. On appeal, the defendants present eight issues and one supplemental issue. We affirm in part, reverse and render in part, and reverse and remand in part.

### Background Facts

The Scandinavian Oil Investors Society acquired oil and gas leases across the country. The Society formed various related "SOIS" companies, partnerships, and corporations. Defendant Bluestar was named as the registered operator of the SOIS leases. SOIS management intended to name defendant SOIS Operating as the registered operator at a later date but never did so. Both defendants were part of the SOIS group.

Murphy, who had vast experience in and knowledge of the Sharon Ridge Field in Scurry and Mitchell Counties, was hired to supervise SOIS's oil and gas operations in that field. Murphy entered into a contract regarding his duties as a "District Manager" to supervise the field on behalf of the operator. The contract expired prior to the events at issue in this case, but the parties continued their business relationship for two years after the contract expired. Although Bluestar was the registered operator, SOIS Operating entered into the contract with Murphy. Murphy, who contended that he was just a "pumper" and not really a "district manager," was fired after he purchased certain leases, the J. Cleo Thompson Properties, in the vicinity of SOIS's leases without first giving SOIS an opportunity to purchase those leases. At trial, SOIS representatives asserted that they wanted the Thompson leases for a prospective waterflood program that Murphy had suggested. At the time Murphy was fired, the defendants owed him for fifteen days of work. The parties stipulated that Murphy's com-

pensation for that time period would have been $2,305.51. The parties also stipulated that, at all relevant times, the plaintiffs' relationship with the defendants was that of independent contractor.

In addition to seeking payment for fifteen days of services rendered, Murphy sought damages in assumpsit resulting from the defendants' use of an injection well located on Murphy's property. The McWilliams No. A4 well was located near Murphy's house. The defendants owned the McWilliams lease and used the McWilliams No. A4 to dispose of salt water from that lease. However, the defendants also used the McWilliams No. A4 to dispose of salt water from other leases. Murphy sent the defendants a letter requesting that they cease using that well for off-lease disposal. The defendants claimed a prescriptive easement and, thus, did not discontinue using the McWilliams No. A4 to dispose of off-lease water. At the time of trial, the defendants had used the well without permission for nine months.

### Issues on Appeal

In the first issue, the defendants contend that the award for breach of an agreement to pay Murphy for services rendered was erroneous insofar as it was rendered against the defendants jointly and severally. In the second issue, the defendants contend that there was no evidence that SOIS Operating used the McWilliams No. A4 well and that, therefore, joint and several liability on that issue was erroneous. In the third issue, the defendants assert that the trial court erred in entering a declaratory judgment against Bluestar regarding the ownership of the Thompson leases. In the fourth issue, the defendants argue that the trial court erred in awarding damages for the disposal of off-lease water on the McWilliams lease. The defendants contend in their fifth, sixth, and

seventh issues that the trial court erred in failing to present a jury question and instructions on their counterclaims for fraud, deceptive trade practices, and breach of fiduciary duty. In the eighth issue, the defendants challenge the award of $50,000 in attorney's fees to plaintiffs. Finally, in their supplemental issue, the defendants assert that the trial court erred in granting declaratory relief in this case.

### Joint and Several Liability

 Judgment was rendered against the defendants "jointly and severally." Joint and several liability is appropriate in tort cases when the independent tortious conduct of two or more persons is a legal cause of an indivisible injury and in contract cases when two or more persons promise the same performance. *CTTI Priesmeyer, Inc. v. K&O Ltd. P'ship*, 164 S.W.3d 675, 684 (Tex.App.-Austin 2005, no pet.).

With respect to the first and second issues on appeal, the record shows that the jury was asked to determine whether "Defendants/Counter–Plaintiffs SOIS/Bluestar Energy, Inc." breached an agreement to pay plaintiffs for services rendered and to place a value on "Defendants/Counter–Plaintiffs SOIS/Bluestar Energy, Inc.'s" use and occupancy of the McWilliams No. A4 well. With respect to these questions, SOIS meant defendant SOIS Operating. The defendants did not object to defendant SOIS Operating being included in these jury questions. In fact, at the informal charge hearing, the defendants' attorney suggested that his clients be referred to in such manner.

Furthermore, the record shows that Murphy took orders from Bluestar's president, David Brooks Jones, and that Murphy received paychecks from both Bluestar and SOIS Operating. The record also shows that, in response to the letter re-

garding the illegal use of the McWilliams No. A4 well, both defendants claimed an easement to use the well. According to the testimony of the president/chairman of the SOIS group, "it doesn't matter" which of the defendants owe money to Murphy because "[i]t's just moving money around between the different companies." We hold that joint and several liability was appropriate in this case. The first and second issues are overruled.

### Damages for Water Disposal

■ In the fourth issue, the defendants contend that the trial court erred in awarding damages for their use of the McWilliams No. A4 Well for off-lease water disposal because the damages were speculative. We disagree. Murphy testified that the defendants used that well for off-lease disposal for nine months after being told to terminate such use. Murphy also testified without objection that he was familiar with the fee charged by surface owners for the disposal of off-lease water and that, on the low end, the amount would be $5,000 per year. Murphy testified that $5,000 per year would be the value of the defendants' use and occupancy of the disposal well. The jury's finding of $3,750 for nine months of use and occupancy was, thus, supported by the record and was not speculative. The fourth issue is overruled.

### Jury Questions

In their next three issues, the defendants argue that the trial court erred in failing to include jury questions and instructions on fraud, deceptive trade practices, and breach of fiduciary duty. The defendants had pled these causes of action as counterclaims against the plaintiffs. A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex.R. Civ.

P. 277. Questions, instructions, and definitions that are raised by the written pleadings and the evidence shall be submitted. Tex.R. Civ. P. 278. An appellate court will not reverse a trial court's judgment for failing to submit a question unless it was requested in writing in substantially correct wording by the party complaining of the judgment or, with respect to a question upon which the opposing party relied, the complaining party objected to the omission. Rule 278.

The plaintiffs assert that the defendants waived these issues by failing to include appropriate citations to the record and authority as required by Tex.R.App. P. 38(h). *See Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983). While we agree that these three issues were not briefed well, we do not find that they were so poorly briefed as to have waived the issues.

■ The plaintiffs also assert (1) that the defendants invited the error by leading the trial court to believe that they did not wish to submit fraud, deceptive trade practices, or breach of fiduciary duty to the jury but wished to submit their case on a breach-of-contract theory only; (2) that there was no evidence to support the submission of these issues to the jury; (3) that the defendants' requests were not in substantially correct form and were obscured; and (4) that the defendants' claims sounded in contract, not tort. We agree that the defendants failed to properly preserve these issues in the trial court.

The record shows that, prior to trial, the defendants submitted a 43–page proposed jury charge, which is included in the clerk's record. Contained within this proposed jury charge were several instructions and questions related to fraud, deceptive trade practices, and breach of fiduciary duty. For purposes of this discussion, we will assume that the questions in the proposed charge were timely sub-

mitted, were substantially correct, and were not obscured by voluminous unfounded objections. *See* TEX.R. CIV. P 274, 278; *see also Alaniz v. Jones & Neuse, Inc.,* 907 S.W.2d 450 (Tex.1995). Despite these assumptions, however, we find that the defendants failed to preserve their complaints for review because they invited error, if any, and because the trial court did not refuse the questions submitted.

The reporter's record contains a lengthy discussion from an informal charge conference that was held upon close of the evidence between the court and the attorneys. At the conference, the defendants' attorney, Gary E. Smith, at first requested that the trial court submit questions on fraud, deceptive trade practices, and breach of a fiduciary duty. But, subsequently, Smith agreed to submit the case on breach of contract only. The record shows the following:

> THE COURT: It seems to me these are not fraud questions, these are breach of contract questions.
>
> MR. SMITH: Okay. I agree that they can be both, and I will agree with the breach of contract.
>
> . . . .
>
> THE COURT: I want to see a proposed charge in writing soon. You can each give me whatever you want to give me. I know what you want. I don't know what you want.
>
> MR. SMITH: Your Honor, *I think we can submit the whole thing on breach of contract.*
>
> THE COURT: Okay.
>
> MR. SMITH: Just like I just said, and then with attorney's fees.
>
> . . . .
>
> MR. SMITH: That will make it simple. (Emphasis added).

After the charge was prepared as agreed to during the charge conference, Smith objected to the failure to include questions and instructions with regard to fraud, deceptive trade practices, and breach of fiduciary duty.

■ It is "elementary" that a party may not invite error by asking "something of a court and then complain that the court committed error in giving it to him." *Northeast Tex. Motor Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *see also Gen. Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 920 (Tex.1993) (parties may not invite error by requesting an issue and then objecting to its submission). Similarly, we hold that the defendants in this case could not invite an error in the jury charge by agreeing to the omission of a claim upon which they had the burden of proof and then subsequently preserve the issue for review by objecting to the omission. The defendants had the burden of proof on their counterclaims for fraud, deceptive trade practices, and breach of fiduciary duty; consequently, they had the burden to submit questions on those issues. Rule 278. Although the defendants did submit written questions contained in their proposed jury charge, they subsequently agreed to the omission from the jury charge of any questions regarding fraud, deceptive trade practices, and breach of fiduciary duty. Unlike the appellant in *Alaniz,* the defendants in this case did not make the trial court "reasonably aware of the complaint, timely and plainly, and obtain[ ] a ruling." *Alaniz,* 907 S.W.2d at 451 (citing *State Dept. of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992)). The discussion during the charge conference reveals that the defendants confused the trial court with their varied requests and contentions relative to the jury charge and that the defendants invited the error, if any, in the omission of questions on fraud, deceptive trade practices, and breach of

fiduciary duty. The fifth, sixth, and seventh issues are overruled.

### Declaratory Relief

In their third issue and their supplemental issue, the defendants challenge the declaratory relief awarded by the trial court. In its judgment the trial court declared in Paragraph No. 4 that:

(i) Plaintiffs had no duty to offer "The J. Cleo Thompson Properties" to Defendants before purchasing them;

(ii) Defendants have no valid claim, interest, or constructive trust/ownership in "The J. Cleo Thompson Properties";

(iii) Plaintiffs do not owe Defendants any unpaid contract payments for breach of contract;

(iv) Plaintiffs did not owe nor have they breached any fiduciary duty to Defendants;

(v) Defendants do not have or own, nor have they acquired, a prescriptive easement in the "McWilliams Lease" to dispose of "Off Lease Water" in the "McWilliams # A-4 Well"; and

(vi) In the future Defendants have no right to and are prohibited from disposing of "Off Lease Water" in the "McWilliams # A-4 Well."

With respect to declarations (i), (ii), and (iv), the defendants specifically contend that the declarations are incorrect as a matter of law and are based on fact issues that should have been submitted to the jury. The defendants contend that the pronouncements made in (v) and (vi) were not requested in the plaintiffs' pleadings and that the issues therein were already pending before the court in another cause of action.

Declaratory relief is available pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997) as follows:

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

Furthermore, a declaratory judgment is "not available to settle disputes already pending before a court." *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990). In *BHP,* the supreme court recognized that a declaratory judgment action may not be used to deprive the real plaintiff of the traditional right to choose the time and place of suit and that a trial court should decline to exercise jurisdiction seeking a declaration of non-liability in a tort action because non-liability for past conduct is not normally a function of the declaratory judgment statute. *Id.; see also Abor v. Black,* 695 S.W.2d 564, 566–67 (Tex.1985).

The declarations in the present case did not involve a question of construction or validity arising under a deed, will, written contract, statute, or other writing as authorized by Section 37.004. Contrary to the guidelines in *BHP,* the declarations in this case involved disputes that were already pending before the trial court, granted relief that would deny the defendants the right to choose the time and place of suit, and declared the plaintiffs' non-liability in a tort action. Furthermore, declarations (v) and (vi) regarding the McWilliams No. A4 well were not supported by the parties' pleadings. *See* TEX.R. CIV. P. 301 (judgment of the court

shall conform to the pleadings). The record shows that neither party requested any declaration of rights with respect to the McWilliams lease. We hold that the declaratory relief awarded in this case was improper. Accordingly, we sustain the defendants' third issue and their supplemental issue; we reverse the trial court's judgment insofar as it grants declaratory relief; and we render a take nothing judgment against the plaintiffs on these claims.

### Attorney's Fees

 In their eighth issue, the defendants challenge the award of $50,000 in attorney's fees to the plaintiffs. In its judgment, the trial court awarded "reasonable and necessary attorneys' fees in the amount of $50,000.00" and stated that this amount was equitable and just for the declaratory relief granted therein. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). However, we have concluded that declaratory relief was improper in this case. Parties to a lawsuit "may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees." *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex.2004); *see also John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex.2002); *Jordan v. Hagler*, 179 S.W.3d 217, 222–23 (Tex.App.-Fort Worth 2005, no pet.); *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex.App.-Eastland 2003, pet. denied).

The only remaining cause of action for which the plaintiffs were authorized to recover attorney's fees was their claim for breach of an agreement to pay for services rendered. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997). That cause of action was relatively simple and straightforward: the parties stipulated that Murphy's compensation for the relevant time period would have been $2,305.51, and the evidence was uncontradicted that Murphy performed services for the defendants during that time period. The only question was whether Murphy's performance was adequate enough so as not to excuse the defendants' failure to pay. Because declaratory relief was not available in this case, we must reverse the award of attorney's fees and remand that issue so the trial court can reconsider the amount of attorney's fees to award for the defendants' breach of the agreement to pay for services rendered. The eighth issue is sustained.

### This Court's Ruling

A declaratory judgment was not appropriate in this case; therefore, the judgment of the trial court is reversed insofar as it awarded declaratory relief. We render judgment that Bill W. Murphy and Bill W. Murphy Operating Company, Inc. (plaintiffs) take nothing on their claims for declaratory relief. We also reverse the trial court's judgment insofar as it awarded attorney's fees, and we remand that issue to the trial court for reconsideration. In all other things, the judgment of the trial court is affirmed.