# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====

### NO. 03-10-00319-CV

=====

**Appellants, Lou Ann Hughes and Performance Products, Inc. //
Cross-Appellant, James Pearcy**

**v.**

**Appellee, James Pearcy //
Cross-Appellees, Lou Ann Hughes and Performance Products, Inc.**

=====

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
### NO. C2007-0787D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

=====

## M E M O R A N D U M   O P I N I O N

This suit arises from James Pearcy's sale of his microbial feed supplement business, Performance Products, Inc. (PPI), to his former attorney Lou Ann Hughes.[1]  Hughes and PPI (collectively Appellants) appeal from the trial court's final judgment, consistent with the jury's findings, denying their breach of contract, fraud, and negligent misrepresentation claims and awarding Pearcy $714,010 in damages for his breach of contract claim, $1 in damages for his breach of fiduciary duty claim, and $163,644 in attorney's fees.  Appellants challenge the trial court's denial of their motion to transfer venue, contend the trial court submitted an improper jury charge, and challenge the legal and factual sufficiency of the jury's findings on Pearcy's breach of contract claim and on their claims for negligent misrepresentation and fraud.  On cross-appeal, Pearcy challenges

---

[1]  Microbial feed supplements are beneficial bacteria, i.e, probiotics, blended with other components and fed to livestock to improve the animals' digestive health.

the sufficiency of the evidence supporting the jury's award of nominal damages for his breach of fiduciary duty claim. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to purchasing PPI from Pearcy, Hughes had served as either Pearcy's or PPI's lawyer in several transactions, including negotiating a prior attempted sale of PPI to another buyer. After Hughes offered to purchase PPI, Pearcy initially sought separate counsel but terminated the representation before his lawyer completed any work on the transaction. Hughes then agreed to draft all of the legal documents related to her purchase of PPI, including a licensing agreement.

Under the terms of the licensing agreement, Pearcy granted PPI—for a five-year period—the exclusive rights to the microbial formulations used to create PPI's feed supplement products in exchange for royalty payments. The royalty payments were fourteen percent of net sales up to a total payment of $1,350,000. At the end of the five-year period, PPI then would have an opportunity to purchase the microbial formulations for $100,000. The licensing agreement additionally provided PPI the right to accelerate its option to purchase the microbial formulations if the company paid Pearcy both the maximum unpaid royalties remaining under the term of the agreement and the purchase price for the formulations.

Before the end of the five-year period, Pearcy contends that Hughes accelerated PPI's option to purchase the microbial formulations by verbally demanding that he deliver the formulations. Pearcy further contends that after he provided her with the formulations, PPI refused to pay him the $100,000 purchase price and remaining unpaid royalties. Pearcy sued Hughes and PPI alleging causes of action for breach of contract, misappropriation of trade secrets, breach of

2

fiduciary duty, negligent misrepresentation, and fraud. Hughes countered that she never demanded the formulations and that any formulations delivered were not discernible and were insufficient to trigger the acceleration option. Hughes further contended that Pearcy misrepresented in the licensing agreement that he had invented and exclusively owned the formulations and countersued for breach of contract, fraud, and negligent misrepresentation.

## VENUE

In their first issue on appeal, Appellants contend the trial court erred in denying their motion to transfer venue from Comal to Bexar County based on a contractual choice of venue provision. Venue may be proper in many counties under the venue rules, and the plaintiff has the first choice in the filing of the lawsuit. *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). In reviewing the trial court's venue determination, we must conduct an independent review of the entire record—including the trial on the merits—to determine whether any probative evidence supports the trial court's venue decision. Tex. Civ. Prac. & Rem. Code § 15.064(b); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993). We review the evidentiary record in the light most favorable to the venue ruling but review de novo the trial court's application of the law to the facts of the case. *Ruiz*, 868 S.W.2d at 758; *Chiriboga v. State Farm Mut. Auto Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.). In our review, our task is not to determine the best venue. *Chiriboga*, 96 S.W.3d at 681. Rather, if any probative evidence supports the trial court's venue decision—even if the preponderance of the evidence is to the contrary—we must affirm. *Ruiz*, 868 S.W.2d at 758; *Chiriboga*, 96 S.W.3d at 678.

3

Pearcy filed this suit in Comal County on permissive venue grounds.[2] *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). Appellants filed a motion to transfer venue objecting to venue in Comal County on the grounds that venue was mandatory in Bexar County pursuant to Texas Rule of Civil Procedure section 15.020, a mandatory venue provision governing the specification of venue by written agreement for actions arising from major transactions. *See id.* § 15.020 (defining "major transaction" venue provision). Because Pearcy's chosen venue rests on permissive grounds and the motion to transfer was based on a mandatory venue provision, it is reversible error if the trial court erroneously denied application of the mandatory venue provision. *See Wichita Cnty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996).

As the mandatory venue provision under section 15.020 applies only to actions arising from major transactions, our first task is to determine whether the sale of PPI constituted a "major transaction" within the meaning of the statute. *See* Tex. Civ. Prac. & Rem. Code § 15.020. "Major transaction" is defined as:

> A transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million.

---

[2] Pearcy pleaded that venue was proper because a substantial part of the acts or omissions giving rise to his breach of fiduciary duty claim against Hughes accrued in Comal County. Hughes failed to file an amended motion to transfer venue specifically denying this venue fact. *See Moriarty v. Williams*, 752 S.W.2d 610, 612 (Tex. App.—El Paso 1988, writ denied). A failure to specifically deny a pleaded venue fact admits it for purposes of venue. Tex. R. Civ. P. 87.

*Id*. § 15.020(a). Here, there are four written agreements relevant to Hughes purchase of PPI, titled: (1) Stock Purchase Agreement; (2) Non-Competition Agreement; (3) Consulting Agreement; and (4) Licensing Agreement. All four documents were executed at the same time as part of the single transaction of selling PPI to Hughes, and the Stock Purchase Agreement expressly incorporates both the Non-Competition Agreement and Licensing Agreement. "The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981). Accordingly, for purposes of establishing venue under section 15.020, we will construe the four documents together as "a written agreement."

Construing the agreements together as a single written agreement, our next task is to determine whether under the agreements "a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." Tex. Civ. Prac. & Rem. Code § 15.020. The Stock Purchase agreement expressly entitles Pearcy to receive $400,000, and the Non-Competition and Consulting Agreements each expressly entitle Pearcy to receive $50,000. Thus, the aggregate stated value of $500,000 for these three documents is easily determinable. The dispute, however, is over the "aggregate stated value" of the Licensing Agreement. The Licensing Agreement provides that for a period of five years Pearcy is entitled to royalty payments of fourteen percent of PPI's net sales up to $189,000 per twelve-month period and further provides PPI with the option to buy Pearcy's microbial formulations for $100,000 at the end of the five-year royalty period. Thus, under the licencing agreement, Pearcy may receive a total

5

payment of over $1 million. The payments, however, are contingent upon PPI's future sales and PPI electing to purchase the formulations at a later date.

Under section 15.020(a), the parties' written agreement must state the aggregate value of the consideration and obligate a person to pay or receive the stated consideration. *Id*. (major transaction when person "is obligated to pay or entitled to receive, consideration with an aggregate *stated* value equal to or greater than $1 million) (emphasis added); *see also In re Togs Energy, Inc*., No. 05-09-01018-CV, 2009 WL 3260910, at *1 (Tex. App.—Dallas Oct. 13, 2009, no pet.) (mem. op.) (venue selection clause unenforceable where extraneous evidence showed purchased property rights were worth over $1 million but written agreement itself did not contain the aggregate stated value of consideration). On the face of this agreement, PPI may never have been obligated to pay any sum as consideration because all payments are conditioned on future, uncertain net sales and the Appellants electing to exercise their option to purchase Pearcy's formulations at a future date. Thus, we cannot conclude that the licensing agreement on its face obligates any person to pay or receive consideration with an aggregate stated value of at least $500,000—the amount needed for the entire transaction to have a stated value equal to or greater than $1 million and qualify as a major transaction under section 15.020. *See In re Texas Ass'n of Sch. Bds., Inc*., 169 S.W.3d 653, 658–59 (Tex. 2005) (insurance policy providing over $1 million in coverage not a "major transaction" under section 15.020 as payment of policy limits was conditioned on the happening on an event of chance); *see also Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 359 (Tex. App.—Dallas 2009, pet. denied) (concluding credit card service agreement obligating credit card processing company to pay golfing business $5,000,000 it received from business's credit card sales was "major

6

transaction," in "contrast" to "the insurer in *Tex. Ass'n of Sch. Bds.* [who] may never have to pay any money under the agreement"). Accordingly, we conclude the parties' written agreement did not contain a stated aggregate consideration of $1 million and was not a major transaction for purposes of section 15.020. As such, the mandatory venue provision was not enforceable. We overrule Appellant's first issue on appeal.[3]

## BREACH OF FIDUCIARY DUTY

Prior to purchasing PPI from Pearcy, Hughes had served as either Pearcy's or PPI's lawyer in several transactions, including negotiating a prior attempted sale of PPI to another buyer. Shortly after this sale fell through, Hughes informed Pearcy she was interested in purchasing PPI and requested numerous documents from him. After receiving the requested documents, Hughes drafted a letter of intent offering to purchase PPI for $500,000 less than Pearcy had asked for in his prior attempted sale she had negotiated and advised Pearcy to seek separate counsel to review the transaction. Pearcy asked another attorney to review the transaction but became dissatisfied with the other attorney's representation and terminated the relationship. Hughes then agreed to draft all of the documents relevant to the transaction.

---

[3] In their brief, Appellants additionally contend the trial court abused its discretion by refusing to enforce a forum selection agreement between the parties. Under Texas law, there is a distinction between a venue selection clause and a forum selection clause. *Compare Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005) (enforcement of forum-selection clause mandatory unless shown to be unreasonable), *with Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972) ("fixing of venue by contract, [except as provided by statute] is invalid). Regardless, Appellants did not raise this issue at the trial court in their motion to transfer venue, and we need not address it on appeal.

7

At trial, Pearcy contended Hughes breached several fiduciary duties owed to him as her lawyer, including misusing confidential information she obtained from her prior representation of him for her own benefit. Hughes contended that her attorney-client relationship with Pearcy terminated prior to her purchase of PPI but admitted that—at the time of the sale—she continued to owe him a fiduciary duty not to use confidential information obtained during the attorney-client relationship. As Hughes admitted she owed a fiduciary duty to Pearcy, the trial court declined to submit a jury question regarding the existence of a fiduciary relationship and submitted only a question instructing that Hughes owed Pearcy a fiduciary duty as his attorney and placing the burden of proof on Hughes to prove, among other things, that the transaction was fair and equitable and that she did not use her position to gain benefit for herself at Pearcy's expense. The jury ultimately found in favor of Pearcy on his breach of fiduciary duty claim but awarded only $1 in nominal damages.

In their second and third issues on appeal, Appellants allege that the breach of fiduciary duty question and accompanying instructions should have been conditioned on an affirmative finding from the jury that there was an existing attorney-client relationship at the time Hughes purchased PPI because the scope of the fiduciary duty owed by Hughes and whether Hughes bore the burden of proof on the question was dependent on whether Pearcy was an existing or former client.[4] *See Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 n.3 (Tex. 2000) (burden on attorney to establish that contract with client is fair and reasonable does not arise if attorney-client relationship is severed prior to agreement); *see also Sealed Party*

---

[4] Appellants raise several jury charge arguments in their second and third issues on appeal that are all premised on the trial court's failure to submit a jury question establishing the existence of an attorney-client relationship during the sale of PPI.

*v. Sealed Party*, No. H-04-2229, 2006 WL 1207732, at \*7 (S.D. Tex. May 4, 2006) (fiduciary relationship generally ends when attorney-client relationship is terminated but attorney may have continuing *narrow* fiduciary duties, including duty to preserve confidential information obtained during relationship).

An appellate court will not reverse a trial court's judgment for failing to submit a jury question unless it was requested in writing in substantially correct wording by the party complaining of the judgment or, with respect to a question upon which the opposing party relied, the complaining party made a timely, specific objection to the omission. Tex. R. Civ. P. 278; *see Morris v. Holt*, 714 S.W.2d 311, 312 (Tex. 1986). Here, there is no evidence in the record that Appellants requested a jury question on the existence of an attorney-client relationship. Rather, Appellants' took the contrary position at the jury charge conference, apprising the trial court that "it's best not to submit the question as to whether or not the attorney agreed to—to represent the—client in that particular transaction." Accordingly, we conclude Appellants have failed to preserve error for these issues in the trial court. *See* Tex. R. Civ. P. 278.; *see also Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 101 (Tex. App.—Eastland 2006, pet. denied) (party may not complain of invited charge error on appeal). We overrule the Appellants' second and third issues on appeal.[5]

---

[5] In his sole cross-point, Pearcy contends he established as a matter of law $500,000 in damages for his breach of fiduciary duty claim and challenges the sufficiency of the evidence supporting the jury's award of nominal damages. The only evidence supporting Pearcy's claim for damages was that Hughes learned through her attorney-client relationship that Pearcy had attempted to sell his business for $2 million and then offered to buy the business for $1.5 million. We cannot conclude this evidence establishes $500,000 in economic damages as a matter of law. We overrule Pearcy's sole issue on cross-appeal.

## BREACH OF CONTRACT

As previously discussed, Hughes and Pearcy entered into a licensing agreement as part of the sale of PPI providing, in part, that PPI would pay Pearcy royalty payments for a period of five years and then would have the option to purchase Pearcy's microbial formulations for $100,000. PPI, however, had the right to accelerate its option to purchase the formulations if it paid the maximum unpaid remaining royalties under the term of the agreement in addition to the purchase price. At trial, Pearcy asserted Hughes triggered the $100,000 option payment and acceleration of royalty payment by demanding Pearcy provide the microbial formulations before the end of the five-year period. Pearcy further contended he delivered the formulations demanded by Hughes, but that PPI refused to pay the $100,000 option payment and acceleration of royalty payments in violation of the licensing agreement. The jury agreed with Pearcy, finding that PPI failed to comply with the licensing agreement and awarding $714,000 in damages—the equivalent of the $100,000 purchase price plus the maximum unpaid royalties remaining under the agreement.

In their fourth issue on appeal, Appellants contend there is legally and factually insufficient evidence to support the jury's finding that PPI breached the licensing agreement because the formulations delivered by Pearcy were insufficient to satisfy his obligations under the agreement. When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding of fact for which the opposing party had the burden of proof, the appellant must demonstrate that there is no evidence, or merely a scintilla of evidence, to support the adverse finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). At trial, however, Appellants admitted during closing arguments that PPI had breached the licensing agreement by not paying amounts owed and instructed

10

the jury to make an affirmative finding on this question. Accordingly, we cannot conclude there is legally and factually insufficient evidence to support the jury's finding that PPI failed to comply with the licensing agreement. *See Isern v. Watson*, 942 S.W.2d 186, 200–201 (Tex. App.—Beaumont 1997, pet. denied) (formal declarations in open court by party's attorney that are clear, deliberate, and unequivocal constitute judicial admissions and waive proof of matters admitted in favor of opposing party).

To the extent that Appellants' argument can be construed as asserting that Pearcy's alleged breach of the licensing agreement excused their own non-performance, the trial court granted a directed verdict against Appellants on this issue after finding there was not a scintilla of evidence supporting their claim that Pearcy had breached the licensing agreement. This ruling has not been challenged on appeal. Accordingly, we conclude Appellants have waived this issue on appeal. *See Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 430–31 (Tex. App.—Austin 2000, no pet.) (appellant waives right to complain of trial court's ruling when he fails to assign error to the ruling). Accordingly, we overrule Appellants' fourth issue on appeal.

## FRAUD / NEGLIGENT MISREPRESENTATION

Appellants brought claims against Pearcy for fraud and negligent misrepresentation arising from statements in the licensing agreement representing that Pearcy himself had invented, developed, and exclusively owned the microbial formulations licensed to PPI under the agreement. Appellants contend that Pearcy's statements in the licensing agreement that he invented, developed, and exclusively owned the microbial formulations were fraudulent or negligent misrepresentations because a third-party manufacturer had assisted Pearcy in developing the formulations and the

11

probiotic bacterial strains used in the formulations were another company's trade secrets.  The jury disagreed, finding against Appellants on both their negligent misrepresentation and fraud claims.

In their final issue on appeal, Appellants assert there is legally insufficient evidence to support the jury's adverse findings because they proved fraud and negligent misrepresentation as a matter of law.  When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001).  At trial, Pearcy had argued that Hughes drafted the licensing agreement allocating ownership of the formulations to him, he relied on this representation in negotiating the sale of PPI, and therefore the Appellants should now be estopped from denying his ownership of the formulations.  Under the doctrine of estoppel by contract, "if parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands."  *Masterson v. Bouldin*, 151 S.W.2d 301, 307 (Tex. Civ. App.—Eastland 1941, writ ref'd).  Here, the parties testified that Hughes offered to purchase PPI for $1.5 million and then the parties negotiated how to structure that payment.  In their final contract, the parties agreed that $945,000 of the contract price would be paid from royalties under the licensing agreement.  In determining what portion of the contract price would be paid from royalties, the parties assumed that Pearcy was the owner of the formulations as the basis of their contract negotiations.  Therefore, Pearcy contended at trial that under the doctrine of estoppel by contract, Appellants should be

12

estopped from denying his purported ownership of the formulations. The jury agreed, finding that Pearcy relied to his detriment on Appellants' contract terms stating that he was the owner of the formulations.

As Appellants have failed to challenge this jury finding in an issue on appeal, we are bound by the finding. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 81 (Tex. App.—San Antonio 2011, no pet.) (unchallenged jury findings binding on court of appeals); *see also* Tex. R. App. P. 38.1 (appellant's brief must state concisely all issues presented for review). Accordingly, we conclude the Appellants are estopped from denying Pearcy's ownership of the formulas and have failed to prove their fraud and negligent misrepresentations claims as a matter of law. We overrule Appellants' fifth issue on appeal.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.[6]

---

[6] Appellants present five issues on appeal for our review but raise countless additional issues in their brief and reply brief that were not properly raised in an issue on appeal and do not correspond to the issues listed in their brief. An appellant's "brief must state concisely all issues or points presented for review." Tex. R. App. P. 38.1(f). We have endeavored to address all questions fairly raised by Appellants' issues presented for review. *See id*. We need not address Appellants' remaining arguments further. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("Courts of appeals may not reverse the judgment of a trial court for reason not raised in a point of error.").

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin;
    Justice Henson Not Participating

Affirmed

Filed:   December 8, 2014

14