NO. 07-08-0006-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 10, 2009
_____

In the Matter of the Marriage of
MARY PALACIOS and JESUS PALACIOS
and In the Interest of L.P., A Child
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-532,385; HON. JIM BOB DARNELL, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The case before us involves a trial court's attempt to value and distribute the marital estate of Jesus and Mary Palacios when the trial court found neither party's valuation of that property credible. Jesus contends that the court abused its discretion in making the division it did because the division lacked evidentiary support, it was unequal, and awarded reimbursement to Mary.[1] We affirm.

*Applicable Law*

A trial court is charged with making a "just and right" division of the community estate while considering the rights of both parties. *Todd v. Todd*, 173 S.W.3d 126, 128-29

_____

[1] The record reflects that even though Jesus complains about reimbursement being given Mary, none was actually awarded to her. So, that is a matter that needs no attention.

(Tex. App.–Fort Worth 2005, pet. denied). This does not mean that the division must be equal. *See Massey v. Massey*, 807 S.W.2d 391, 398 (Tex. App.–Houston [1st Dist.] 1991, writ denied) (recognizing that an unequal division may be struck as long as the trial court had a reasonable basis for doing so). Moreover, we defer to the division made if it does not evince an abuse of discretion, *see Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App. –Dallas 2005, pet. denied) (noting that an appellate court reviews a trial court's division of property under the standard of abused discretion), and it does not evince such an abuse when it comports with guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Finally, we note that the party complaining of the trial court's division has the burden of demonstrating that it was so unjust as to constitute a clear abuse of discretion. *Frommer v. Frommer,* 981 S.W.2d 811, 814 (Tex. App.–Houston [1st Dist.] 1998, pet. dism'd). That party at bar was and is Jesus.

*Application of Law*

As previously mentioned, the ultimate goal of the trial court is to reach a just and right distribution of the estate. Given this, valuing the marital property is not the end in itself but rather a means to the end. *See Todd v. Todd*, 173 S.W.3d at 129 (holding that the properties' value is merely evidentiary of whether the trial court reached a just and fair division of the community estate).

Furthermore, no one can reasonably dispute that to reach the appropriate end the trial court is dependent upon the efforts of those litigants before it. This is so because it usually has no independent knowledge of the items comprising the marital estate nor of

their worth. So, as is the norm, the trial court at bar turned to the parties for help in doing its job. Yet, they "were not open and truthful" in their responses, as explained in the court's findings. "Both . . . wanted to play low ball/high ball on all property in that each tried to put a high value on the property to be awarded to the other and a low value on property . . . awarded to them." This, as a consequence, lead the trial court to "not feel confident in the values [they] assigned to the property items . . . ."

Furthermore, of the four major property items to be distributed, two consisted of realty in Mexico. One of the items was a residence and the other a vacant lot. According to Jesus, the trial court received no evidence regarding the appreciation in value of the home or "how much [sic] community funds were used" to improve it. Our perusal of the record seems to confirm this; yet, the same record indicates that the default was not its own. For instance, Jesus was asked about the value of the home (which he was eventually awarded) and replied: "I have no idea." Thereafter, he conceded that it would be worth a little more than the Mexico lot that he had previously bought for $9000. What that conclusion was based on, however, went unsaid. This is troubling because conclusory statements about what property is worth are of little assistance in determining market value. *See Ricks v. Ricks*, 169 S.W.3d 523, 527 (Tex. App.–Dallas 2005, no pet.) (stating that conclusory statements of a stock's value without other evidence to support it is not probative of the stock's market value). Similar utterances were made regarding the value of other property items as well. Given help of this kind, one can reasonably see why the trial court found the parties to be rather incredible and the performance of its obligations rather difficult. And, therein lies the basis for our resolution to this appeal.

3

Simply put, Jesus is complaining about a result that he and his ex-wife helped cause. Both failed in their obligation to tender credible and probative evidence upon which the trial court could reasonably rely. Despite their omission, the trial court attempted to reach what it deemed to be a fair and right division of the marital estate. And, we cannot say that it failed in that regard, given the doctrine of invited error.

The concept of invited error not only is well established in Texas jurisprudence, *Kelly v. Demoss Owners Ass'n.*, 71 S.W.3d 419, 424 (Tex. App.–Amarillo 2002, no pet.), but also prevents a litigant from complaining about mistakes that he helped cause. *Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 101 (Tex. App.–Eastland 2006, pet. denied); *Keith v. Keith,* 221 S.W.3d 156, 163 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Given the value, or lack thereof, of the testimony and evidence provided by Jesus and Mary, one can reasonably conclude that both helped cause the property division in dispute. In other words, the trial court's result, which appears to be a laudable effort to achieve a just and right division under the circumstances before it, was effectively invited by their effort, or lack thereof. Thus, Jesus cannot complain of it on appeal.

While some may believe that jurists are all knowing (those some normally being the jurists themselves) we are not. Admittedly, the quality of our work is directly proportional to the quality of the work undertaken by those appearing before us. We need the help of litigants and their counsel. Without it, our system of justice tends to falter for its success is the result of teamwork. And, when it does falter we are not alone in blame. Nor should we alone suffer the consequences. The team having faltered here, the issues of appellant are overruled.

We affirm the judgment of the trial court.


Brian Quinn
Chief Justice