

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00372-CV
_____

IN THE MATTER OF THE MARRIAGE OF STEPHENIE MCDANIEL AND ANDREW STUART MCDANIEL AND IN THE INTEREST OF A.G.D.M., A CHILD

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2013-505,390, Honorable Ruben Gonzales Reyes, Presiding

February 19, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Andrew Stuart McDaniel, a federal prisoner, appeals, *pro se,* from a final divorce decree. In addition to granting McDaniel a divorce from his wife, Stephenie, the trial court also divided the marital estate and designated Stephenie managing conservator of the child of the marriage. McDaniel was designated the child's possessory conservator. On appeal, McDaniel complains of 1) being denied due process, 2) the trial court's purported failure to consider statutory factors in determining conservatorship of the child, 3) the trial court's failure to execute findings of fact and conclusions of law, 4) the trial court's failure to rule on his various motions, 5) the manner in which the marital

estate was divided, 6) the trial court's decision to deny him spousal support, and 7) judicial misconduct.[1]  We affirm.

*Due Process*

McDaniel's due process complaint contains various components.  The first one we consider involves the trial court's purported failure to appoint him an attorney.  He allegedly felt entitled to one because he was indigent, had no legal education, and had no access to a library containing Texas legal authority.[2]  Furthermore, an attorney would have been able to conduct discovery, object to evidence, and question Stephenie.  We overrule the complaint.

Generally, an indigent inmate has no right to appointed counsel except when he may be deprived of his physical liberty.  *Bankhead v. Spence*, 314 S.W.3d 464, 467 (Tex. App.—Waco 2010, pet. denied); *accord In re Martinez*, No. 07-99-0056-CV, 1999 Tex. App. LEXIS 8327, at *5-6 (Tex. App.—Amarillo November 2, 1999, no pet.) (not designated for publication) (stating that the right to counsel turns on whether deprivation of liberty may result from a proceeding).  Though McDaniel's liberty has been restricted, the restriction did not arise from or relate to the cause at bar.  Apparently, he was incarcerated for and convicted of possessing child pornography via a federal criminal proceeding.  And, to the extent that the presence of exceptional circumstances may afford a trial court discretion to appoint counsel in a civil matter, TEX. GOV'T CODE ANN. § 24.016 (West 2004); *Gibson v. Tolbert*, 102 S.W.3d 710, 713 (Tex. 2003) (noting that exceptional circumstances are those which are rare and unusual), a divorce action

---

[1] McDaniel also raises a claim of parental alienation and custodial interference.  However, this was not specifically raised below, and we will address it only as it may relate to his other issues.

[2] McDaniel does not explain how he came to cite Texas case and statutory law in his brief when he purportedly lacked access to a law library containing such authority.

involving matters of child custody and property division do not constitute such. *See Taylor v. Taylor*, No. 02-09-00035-CV, 2009 Tex. App. LEXIS 9625, at *6-7 (Tex. App.—Fort Worth December 17, 2009, pet. denied) (mem. op.) (affirming the decision to deny appointment in a divorce and custody proceeding).[3]

More importantly, the record discloses that the trial court extended to McDaniel the opportunity to participate in the trial via phone call, proffer evidence, cross-examine witnesses, and propound argument. That he had sufficient acumen to understand the situation in which he was engaged and to represent himself is also rather clear. Not only did he file motions but also found a way to cite us legal authority to which he allegedly had no access. The latter, in and of itself, is no small feat and surely depicts an individual capable of protecting his own interests.

Due process connotes an opportunity to be heard at a meaningful time and in a meaningful way. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004). Withholding from McDaniel appointed legal counsel did not deny him that under the circumstances before us.

Next, McDaniel tells us that the failure of the trial court to grant his motion to appoint an attorney ad litem for the child somehow implicated due process as well. In so arguing, he informs us that his motion "was never even ruled on." That is problematic for without a ruling on a motion, the complaint encompassed by that motion is not preserved for review. *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012) (stating that "to preserve error for appellate review, the rules generally require the complaining

---

[3] McDaniel also posited below that he was entitled to appointed counsel since his "parental status" *viz* the child of the marriage is being affected. While Texas law may afford an indigent appointed counsel when his parental rights are being terminated, TEX. FAM. CODE ANN. § 107.013(a) (West 2014), termination was not sought here.

party to (1) make a timely objection to the trial court that 'state[s] the grounds for the ruling . . .' and (2) obtain a ruling"). McDaniel having failed to preserve the instant complaint, we overrule it.

Next, McDaniel believed he was denied due process since "he was not heard in a meaningful manner because he was not heard fully nor fairly . . . [because his] evidence was improperly excluded . . . his cross examination of Stephenie was improperly limited . . . and his testimony was improperly limited . . . ."

As for the exclusion of his evidence, the documents alluded to were his exhibits. Yet, the record does not show that he asked the trial court to admit any of them. This omission was made known to him by the trial court when McDaniel referred to a letter containing hearsay. After sustaining the hearsay objection, the trial court informed McDaniel that he did not "have any exhibits admitted into evidence." Despite being told that, he still failed to request the admittance of his exhibits. Therefore, we cannot say that the trial court erred by excluding evidence that was never proffered for admission.

As for McDaniel being "improperly limited" in his cross-examination of Stephenie and having his own testimony "improperly limited," the record fails to show that he objected to those purported acts by the trial court. Nor does it reflect that he requested leave to delve into matters he now deems relevant for the reasons he now utters. For instance, he never informed the trial court he should be allowed to develop evidence regarding Stephenie's relationship with another man as a way to gain an unequal distribution of property. *See Wohlfahrt v. Holloway* 172 S.W.3d 630, 639-40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that the grounds for objection at trial must comport with those on appeal). Nor did he inform the trial court that in

4

directing him to show how various evidence he solicited pertained to the child (when the matter of custody was being debated), it was prohibiting him from developing other unrelated, yet relevant, matters. Indeed, before the proceeding ended, the trial court asked McDaniel if he had "any other evidence you wish to present?" McDaniel responded by merely discussing his desire to receive spousal support and concluded with "[a]nd, really, that's all I have to say, Your Honor." No mention was made of wanting to tender other evidence or somehow being curtailed from developing pertinent matters.[4]

*Manifest Injustice*

Next, we address the issues raised by McDaniel under the heading of "Trial Court Made Such Egregious Errors of Law and Abused It's [sic] Discretion to Such an Extent as to Create Manifest Injustice." Much of the extended discourse involved the purported mindset and conduct of Stephenie and her supposed effort to alienate the child against him. Apparently, the diatribe was fodder to his contention that the trial court did not act in the child's best interest when designating Stephenie as sole managing conservator of the couple's child. Then, McDaniel proceeded to discuss the failure of the trial court to execute findings of fact and conclusions of law, rule on various motions, grant him alimony or spousal support, and equitably divide the marital estate. We overrule each issue.

---

[4] McDaniel represented in his brief that the trial court prohibited him questioning Stephenie about her mental status. Yet, the record belies that. He was allowed to delve into her suffering from post-traumatic distress, her "inconsistencies," her dating a purported alcoholic after McDaniel was imprisoned, her purported refusal to assist in visitations between father and daughter, and her anger issues. Additionally, when questioned about the relevancy of the testimony, McDaniel said that it "applies to custody of the child." That led the court to respond: "let's link it directly to the child." From the latter exchange, we observe that to the extent McDaniel complained to us about being told to tie his evidence to custody matters, the restriction arose because he said that was the topic to which the evidence was relevant.

5

The first subtopic we address is the absence of findings of fact and conclusions of law. Nothing of record indicates that McDaniel requested the same from the court. Therefore, his complaint was waived. *Watts v. Oliver*, 396 S.W.3d 124, 130-31 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding error waived when a timely request for findings of fact and conclusions of law was not made).

The second subtopic we address is the purported failure to rule on pending motions. The motions in question were his request to have Stephenie undergo mental examination, to have an attorney ad litem appointed to represent the child, to have an attorney appointed to represent him, and his motion for new trial. Regarding the request that he be appointed counsel, the reporter's record reveals that the trial court denied it both before trial and during trial; so, McDaniel is mistaken when saying that the trial court did not rule upon it.

Regarding the motion for new trial, a trial court is free to allow motions for new trial to be overruled by operation of law. *See* TEX. R. CIV. P. 329b(c) (stating that if a motion for new trial is not determined by written order signed within seventy-five days after the judgment is signed, it shall be considered overruled by operation of law on expiration of that period). Because the seventy-five day period specified in Rule 329b(c) lapsed without action by the trial court, McDaniel received a ruling upon it by operation of law.

Regarding the other motions, it is true that a trial court has a ministerial duty to act upon motions pending before it. That duty is breached when the jurist is asked to perform the act and then fails or refuses to comply. *See In re Smith*, 279 S.W.3d 714, 716 (Tex. App.—Amarillo 2007, orig. proceeding) (involving a mandamus proceeding

6

and discussing when a trial court errs in failing to act upon pending matters). Here, nothing of record indicates that 1) the motions were brought to the trial court's attention or 2) McDaniel requested a ruling on them.[5] Additionally, one cannot infer that the trial court knew of its obligation to act upon the motions simply because they were filed with the district clerk. *In re Chavez*, 62 S.W.3d 225, 228 (Tex. App.—Amarillo 2001, orig. proceeding) (recognizing that knowledge of the district clerk is not imputed to the trial court). To that, we refer to *Smith* where we said, "a court cannot be faulted for doing nothing when it is or was unaware of the need to act." *In re Smith*, 279 S.W.3d at 716. Having failed to show that the trial court knew of the need to act, McDaniel failed to establish that the trial court was at fault for the matters of which he complained.

The next subtopic we address is the denial of alimony or spousal maintenance from Stephenie. One claiming spousal maintenance is not entitled to the same merely by asking. Rather, he or she must satisfy various statutory requirements. The requirements appear in § 8.051 of the Texas Family Code. Per that provision:

> [T]he court may order maintenance for either spouse only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs and:
>
> (1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence, as defined by Section 71.004, committed during the marriage against the other spouse or the other spouse's child and the offense occurred:
>
> > (A) within two years before the date on which a suit for dissolution of the marriage is filed; or
>
> > (B) while the suit is pending; or

---

[5] The record indicates that McDaniel requested a ruling upon his motion for appointed counsel. Thus, it can be inferred that he was capable of requesting the trial court to rule on motions for which he desired a ruling.

(2)  the spouse seeking maintenance:

     (A)  is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

     (B)  has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

     (C)  is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

TEX. FAM. CODE ANN. § 8.051 (West Supp. 2014).  Assuming, *arguendo,* that McDaniel proved he lacked sufficient separate property to provide for his minimum reasonable needs while in prison, the evidence does not illustrate that 1) Stephenie "was convicted of or received deferred adjudication for a criminal offense" constituting an act of family violence, or 2) McDaniel was unable to earn sufficient income because "of an incapacitating physical or mental disability," was married to Stephenie for ten years or more, or was the custodian of a child of the marriage.  So, the trial court did not err in denying him "alimony."

Next, we address McDaniel's complaints about the property division.  It is true that a trial court must order a division of the estate in a manner that it deems just and right while having due regard for the rights of each party and any children of the marriage.  TEX. FAM. CODE ANN. § 7.001 (West 2006).  However, the burden lies with the complaining party to illustrate that the division struck was so unjust and disproportionate as to constitute a clear abuse of discretion.  *In re Marriage of Palacios*, 358 S.W.3d 662, 663 (Tex. App.—Amarillo 2009, pet. denied).

An inventory filed by Stephenie indicated that 1) the parties owned a house valued at $83,000, 2) the house had a mortgage balance of $82,595.16, 3) Stephenie owned a 2009 Hyundai Elantra valued at $10,000, and 4) the balance of the loan on the car was $9,402.77. Both assets and their accompanying debt were awarded to Stephenie. Each spouse received the personal effects they possessed, while Stephenie was also directed to pay her own student loans. So too was she granted sole managing conservatorship of the couple's child. Given the value of the property and the amount of debt attached to it, little equity remained in either the house or car. Furthermore, nothing of record reveals the value of the remaining personalty. Based on the record before us, and given that Stephenie will bear the expense of raising and providing for the care of the child, we cannot say that McDaniel proved the trial court's property division to be so unjust and disproportionate as to constitute a clear abuse of discretion.

Next, we address the matter of the child's best interests. Statute provides that in matters affecting conservatorship and possession of and access to a child, the primary consideration is the best interests of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014). Furthermore, we interpret McDaniel's discourse on the subject as effort to attack the evidentiary sufficiency of the trial court's decision to designate Stephenie as the child's sole managing conservator. In levying that attack, he focused upon Stephenie's mental stability and her purported effort to alienate the child against him.[6] Little is said, however, about his ability to raise a child from prison due to his conviction relating to child pornography. Contrary to McDaniel's suggestion otherwise, the imprisonment of a

---

[6] Apparently, much of the supposed evidence of Stephenie's mental instability appears in exhibits which he never asked the trial court to admit. Thus, they are outside the purview of this court.

parent is a factor that can be considered in determining the child's best interests. *See A.S. v. Texas Dep't of Family & Protective Servs.,* 394 S.W.3d 703, 715 (Tex. App.—El Paso 2012, no pet.). And, though, he proffered that others could act as his surrogate while he served his sentence, no evidence of record illustrates that those purported surrogates would agree to rear or were capable of raising the child. To that, we had the evidence of McDaniel's tie to child pornography, a rather heinous criminal act. That is certainly a factor the trial court could have weighed in determining conservatorship and the extent of access McDaniel should be given to a child. And, while there may be evidence of Stephenie's "inconsistency" (as McDaniel described it), post-traumatic stress disorder, and anger, that evidence was not so weighty as to preclude the trial court from deciding that she was the more capable of the two when it came to making decisions affecting the child's well-being.

Simply put, we acceded to McDaniel's demand that the factors recited in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) be considered. And, upon so considering them, we conclude that ample evidence supports the trial court's implicit decision that the child's best interests warranted designating Stephenie as the sole managing conservator.

*Judicial Misconduct*

Finally, McDaniel contended that the trial court committed judicial misconduct because it arbitrarily changed the final hearing date and was biased against him due to his incarceration. We overrule the issue.

Regarding the trial date change, McDaniel uttered no objection when appearing at trial. Instead, he announced that he was ready to proceed. Uttering no objection, he failed to preserve the complaint for review.

Regarding the claim of judicial bias, we perused the record thoroughly for evidence of the same. None was found. More importantly, and as we concluded above, the trial court's decisions regarding spousal maintenance, the division of property, and custody of the child were lawful exercises of judicial discretion. It may be that McDaniel did not receive the relief he sought, but that alone is not evidence of improper bias.

Having overruled all of McDaniel's issues, we affirm the final judgment of the trial court.

Brian Quinn
Chief Justice