**Opinion filed March 9, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00066-CV

_____

## PAUL E. SIMONS, Appellant

## V.

## KAREN COLE SIMONS, Appellee

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM67240**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a final divorce decree that dissolved the marriage of Appellant, Paul E. Simons, and Appellee, Karen Cole Simons,[1] and determined the division of their community estate and the conservatorship of their child, E.P.S. Appellant is proceeding on appeal without the assistance of counsel.[2]  In five issues,

---

[1]We note that Appellee did not file a brief.  Therefore, we have independently reviewed and analyzed the record before us and the merits of Appellant's contentions and claims of error.

[2]We liberally construe briefs and other filings that are submitted by pro se parties; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure.  *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978).

Appellant asserts that the trial court abused its discretion when it (1) effectively terminated his parental rights without due process, (2) awarded one hundred percent of the community estate to Appellee, (3) failed to reconstitute the community estate upon the jury's findings of Appellee's fraud on the community and waste, (4) excluded Appellant's summary judgment evidence, and (5) failed to consider the jury's findings of fraud on the community and waste in its findings of fact and conclusions of law. We affirm.

## I. *Factual Background*

Before the initiation of the underlying divorce action, Appellant pleaded guilty to and was convicted of the offense of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2022). He also pleaded guilty to and was convicted of two counts of aggravated assault with a deadly weapon. *See id.* § 22.02(a)(2). As a result of his convictions, Appellant was twice sentenced to fifteen years' imprisonment in the Texas Department of Criminal Justice, Institutional Division; the trial court ordered Appellant's sentences to be served concurrently. Appellant also pleaded guilty to and was convicted in federal court of the offense of production of child pornography and sentenced to 360 months' imprisonment; the federal district court ordered that Appellant's federal sentence would be served consecutively to his state sentences. *See* 18 U.S.C. § 2251(a). The victim of Appellant's sex-related offenses was Appellant's minor stepdaughter, the daughter of Appellee. Appellant's minor stepdaughter and Appellee were also the victims of Appellant's aggravated assault offenses.

While incarcerated, Appellant filed the underlying divorce action, in which he alleged that Appellee had committed adultery and treated him cruelly during their marriage. Appellee answered and filed a counterpetition for divorce, alleging that Appellant had treated her cruelly during their marriage. Appellant filed a motion for summary judgment, which the trial court denied, and later requested a jury trial. The

jury found, among other things, that (1) Appellant was guilty of cruel treatment against Appellee during their marriage, (2) Appellee had not engaged in cruel treatment against Appellant during their marriage, but that Appellee had committed adultery, fraud on the community, and waste, and (3) Appellant should be named possessory conservator of E.P.S.

Consistent with the jury's findings and its discretion to determine the parties' rights and access to E.P.S., the trial court signed a final decree of divorce in which it (1) appointed Appellee sole managing conservator of E.P.S., (2) appointed Appellant possessory conservator with no rights of possession of or access to E.P.S., and (3) awarded one hundred percent of the community estate to Appellee. Upon Appellant's request, the trial court entered findings of fact and conclusions of law. This appeal followed.

## II. *Standard of Review*

The standard of review for all of Appellant's issues is "abuse of discretion." "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (alteration in original) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

## III. *Analysis*

### A. *Conservatorship—Possession of and Access to the Child*

Appellant's brief, liberally construed, raises two sub-issues in support of his first issue: (1) the trial court's denial of possession of or access to E.P.S. is tantamount to a termination of Appellant's parental rights, and such a termination (a) requires a hearing and (b) must be "strictly scrutinized"; and (2) no evidence exists in the record of any neglect or abuse committed toward E.P.S.

As noted, we review a trial court's decisions regarding conservatorship under an abuse of discretion standard. *In re J.J.R.S.*, 627 S.W.3d at 218 (citing *Gillespie v.*

3

*Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). In this context, challenges to the legal or factual sufficiency of the evidence are not separate grounds of error, but instead are relevant factors to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). There is no abuse of discretion provided that some evidence of a substantive and probative character supports the trial court's decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *see In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) ("[W]e consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion.").

Parsing the case law cited in Appellant's brief as to this issue, we construe his contention to be that the trial court's denial of Appellant's possession of or access to E.P.S. is an abuse of discretion because the evidence does not show that this case presents the rare, "extreme circumstances" in which a complete denial of access is appropriate. *In re Walters*, 39 S.W.3d 280, 287 (Tex. App.—Texarkana 2001, no pet.); *Green v. Green*, 850 S.W.2d 809, 812 (Tex. App.—El Paso 1993, no writ). As a result of this, as we construe Appellant's argument, the trial court's denial of Appellant's possession of or access to E.P.S. amounts to an improper termination of his fundamental parental rights, and, in doing so, the trial court violated Appellant's constitutional right to due process.

In any case that involves a conservatorship determination, the best interest of the child is always the trial court's primary consideration. TEX. FAM. CODE ANN. § 153.002 (West 2014); *J.J.R.S.*, 627 S.W.3d at 218; *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see also Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "As conservatorship determinations are intensely fact driven, the trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel the forces, powers, and influences that cannot be

4

discerned by merely reading the record." *J.J.R.S.*, 627 S.W.3d at 218 (internal quotations and citations omitted). "A trial court's determination of what is in the child's best interest, specifically the establishment of terms and conditions of conservatorship, is a discretionary function." *Id.*

A parent shall be appointed his or her child's sole managing conservator, or both parents shall be appointed joint managing conservators of their child, unless the trial court finds that the appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development." FAM. § 153.131(a); *see J.J.R.S.*, 627 S.W.3d at 218. A parent who is not appointed managing conservator shall be appointed possessory conservator, unless the trial court finds that such appointment is not in the best interest of the child and that parental possession of or access to the child would endanger the child's physical or emotional welfare. FAM. § 153.191; *see J.J.R.S.*, 627 S.W.3d at 218.

When a trial court appoints a parent as possessory conservator, it may grant, deny, restrict, or limit (1) the possessory conservator's possession of or access to the child and (2) any other rights, privileges, duties, and responsibilities with respect to the child that are necessary to protect the child's best interest. *In re Marriage of Patel & Parrish*, 643 S.W.3d 216, 223 (Tex. App.—Texarkana 2022, no pet.) (citing *In re B.P., Jr.*, No. 02-07-00251-CV, 2008 WL 2639264, at *7 (Tex. App.—Fort Worth July 3, 2008, no pet.) (mem. op.)); *see* FAM. §§ 153.191–.193. The Family Code creates a rebuttable presumption that the standard possession order is in the best interest of the child. *See* FAM. § 153.252. When, however, sufficient evidence rebuts this presumption, the trial court may fashion a possession schedule that deviates from the standard possession order. *See id.* § 153.256 (listing factors a trial court may consider when ordering the terms of possession of a parent named possessory conservator under an order that deviates from the standard possession

order); *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *5 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.). The Family Code further mandates that a trial court must "consider the commission of . . . sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." FAM. § 153.004(c) (West Supp. 2022); *see also id.* § 153.256. An order that restricts a parent's right to possession of or access to a child may not impose restrictions beyond those that are required to protect the child's best interest. *Id.* § 153.193.

"[T]he relationship between parent and child is constitutionally protected." *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *3 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.) (alteration in original) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978)). "[A] parent's right to the care and custody of his child is a fundamental liberty interest more precious than property rights." *Id.* (quoting *In re M.S.*, 115 S.W.3d 534, 547–48 (Tex. 2003)); *see Santosky v. Kramer*, 455 U.S. 745, 757 (1982). "[C]omplete denial of parental access should be reserved for situations rising nearly to the level that would call for a termination of parental rights." *Marriage of Patel & Parrish*, 643 S.W.3d at 224; *Philipp v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-11-00418-CV, 2012 WL 1149291, at *8 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.); *Walters*, 39 S.W.3d at 286 n.2. Thus, a complete denial of possession of or access to a child should only occur and be ordered in rare and exceptional instances. *See J.J.R.S.*, 627 S.W.3d at 220; *Walters*, 39 S.W.3d at 287.

As we have said, courts should only determine that a parent should be denied any and all access to his child in the most extreme of circumstances. *Green*, 850 S.W.2d at 812; *Thompson v. Thompson*, 827 S.W.2d 563, 569 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). "In such cases, we must find a balance between deferring to the trial court's factual determinations and carefully examining

the record for evidence of extreme circumstances," holding the evidence to a higher standard than we would an order that merely limited a parent's access. *Marriage of Patel & Parrish*, 643 S.W.3d at 224 (quoting *Fish*, 2010 WL 5019411, at \*3); *see Schiesser v. State*, 544 S.W.2d 373, 378 (Tex. 1976); *Allison v. Allison*, 660 S.W.2d 134, 137 (Tex. App.—San Antonio 1983, no writ) ("Our Supreme Court has recognized that the natural right which exists between parents and their children is one of constitutional dimensions, therefore, this case must be strictly scrutinized."). Ultimately, however,

> there is no statutory requirement that a trial court must grant a possessory conservator a certain degree of possession and access. The Family Code actually provides that the trial court may limit the rights of a possessory conservator if that limitation is in the best interest of the child. In some cases, the trial court's limitation may amount to a complete denial of possession and access, especially where, as here, there was evidence of family violence.

*In re S.A.J.*, No. 14-20-00216-CV, 2020 WL 4689361, at \*3 (Tex. App.—Houston [14th Dist.] Aug. 13, 2020, pet. denied) (mem. op.).

Reviewing courts have upheld the complete denial of possession of or access to a child in cases in which the parent committed acts of sexual abuse or there was evidence of a risk that the parent would commit acts of sexual abuse in the future. *See, e.g.*, *J.A.T. v. C.S.T.*, 641 S.W.3d 596, 614–16 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); *S.A.J.*, 2020 WL 4689361, at \*3; *In re F.A.*, No. 02-16-00156-CV, 2017 WL 632913, at \*3–6 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op.); *Tran v. Nguyen*, 480 S.W.3d 119, 126–27 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re Marriage of Bonner*, No. 10-10-00011-CV, 2010 WL 4409704, at \*2 (Tex. App.—Waco Nov. 3, 2010, no pet.) (mem. op.).

With these principles in mind, we address first Appellant's claim that the trial court's denial of his possession of and access to E.P.S. amounts to a termination of his parental rights, and that such a termination implicates his constitutional due

process rights, including the necessity of and right to a termination hearing. Texas courts have treated challenges to termination of parental rights and conservatorship decisions as separate and distinct issues. *In re J.A.J.*, 243 S.W.3d 611, 616–17 (Tex. 2007) (collecting cases). Indeed, the quantum of proof required to support a termination decision differs from that required to support a conservatorship decision. *Id.* at 616 (contrasting evidentiary standards). Moreover, the Texas Supreme Court has noted that the Family Code guards against any de facto termination of parental rights via a conservatorship order by retaining the trial court's continuing jurisdiction to modify a conservatorship order, if it is in the child's best interest to do so and the family members' circumstances have materially and substantially changed. *Id.* at 617 (citing FAM. §§ 156.001, 156.101). The Family Code also provides for a parent's standing to file a suit to modify a conservatorship order. *Id.* (citing FAM. §§ 102.003(a)(1), 156.001).

Although a decision to order the complete denial of possession of or access to a child in a conservatorship dispute should be rare and reserved for circumstances so extreme as to rise nearly to the level that would call for a termination of one's parental rights, such a denial does not constitute a de facto termination of one's parental rights, and therefore does not implicate Appellant's constitutional due process rights in the manner he now alleges.

We now turn to Appellant's contention, as we construe it, that the trial court abused its discretion when it denied Appellant any possession of and access to E.P.S.

The Family Code provides that the trial court "may not allow" a parent to have possession of or access to a child if it is shown that there is a history or pattern of the parent having committed family violence during the two years preceding the date the suit was filed. *Id.* § 153.004(d); *see F.A.*, 2017 WL 632913, at *4–5. The Family Code also requires that the trial court consider the parent's commission of family violence or acts of sexual abuse in determining whether to deny, restrict, or limit the

8

possession of or access to a child to a parent who is appointed as a possessory conservator. FAM. § 153.004(c); *C.W.*, 2020 WL 4517325, at \*5; *Tran*, 480 S.W.3d at 126. There is no restriction on the trial court's consideration of acts of sexual abuse to only those acts that are committed by a parent against his own child. FAM. § 153.004(c). "[E]vidence that a parent has abused any child is relevant" to this consideration. *See In re J.M.*, No. 02-16-00428-CV, 2017 WL 3821863, at \*4 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.) (citing *In re K.S.*, 492 S.W.3d 419, 427 n.12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)).

Here, the record shows that, in January of 2019, Appellant threatened Appellee and his minor stepdaughter with a machete during a domestic disturbance at their home. According to police reports, on the day of that incident, Appellant beat Appellee because he believed that she had discarded his alcohol. Appellant testified that he aimed his blows at Appellee's scalp in order to hide the marks of his strikes. Appellant poured alcohol on Appellee's head and then dragged her into the shower, where he forced her to remain as he repeatedly alternated having hot and cold water strike her body. Appellant then pressed the machete against Appellee's neck and threatened to stab her. During that time, the minor stepdaughter entered the room and attempted to stop the assault. As a consequence of her efforts, Appellant threatened to stab her as well. After the assault ended, Appellee called the police. Appellant then took E.P.S. and left the house. Police were able to locate Appellant sitting in his pickup, with E.P.S., in an empty field about a mile away. Appellant was charged with and later pleaded guilty to two counts of aggravated assault with a deadly weapon.

The evidence presented to the jury also included Appellant's state court conviction for the sexual offense that he committed against his minor stepdaughter and the factual basis document that Appellant signed as part of his plea agreement in the federal case for production of child pornography. That document describes

that Appellant repeatedly sexually assaulted his minor stepdaughter over the course of at least several months. During the period of his ongoing abuse, Appellant created a sexually explicit video and pornographic images of his minor stepdaughter. The document also states that Appellant confessed to law enforcement that he had engaged in multiple sexual acts with his minor stepdaughter, which included forcing her to masturbate him on five or six occasions and taking her shopping in exchange for sexual favors. Further, Appellant admitted to engaging in oral sex and sexual intercourse with her on multiple occasions.

In its findings of fact and conclusions of law, the trial court found that Appellant had engaged in a pattern and history of family violence against Appellee within the two years preceding his filing for divorce. The trial court further found that (1) allocation of any rights, duties, and obligations to Appellant as possessory conservator would not be in E.P.S.'s best interest, and (2) given the nature of Appellant's criminal convictions for production of child pornography, aggravated sexual assault of a child, and aggravated assault with a deadly weapon, and the length of his imprisonment, possession of or access to E.P.S. would not be in the child's best interest. The trial court found that Appellant's minor stepdaughter was the victim of the charged sex offenses and that Appellee and Appellant's minor stepdaughter were the victims of the charged aggravated assault offenses. With reference to the issue of conservatorship, the trial court appointed Appellee sole managing conservator and Appellant possessory conservator of E.P.S., but ordered that "[g]iven [Appellant's] criminal convictions and imprisonment, [Appellant's] possession of or access to the child would not be in the child's best interest."

The matter before us is precisely the type of rare, extreme circumstance in which the trial court's decision to completely deny a parent's possession of or access to the child is reasonable, appropriate, and justified. *See J.J.R.S.*, 627 S.W.3d at 220; *Walters*, 39 S.W.3d at 287; *Green*, 850 S.W.2d at 812. The evidence supports the

trial court's factual determinations that Appellant had engaged in a history and pattern of family violence. Further, the evidence supports the trial court's determination that in light of Appellant's egregious conduct and subsequent criminal convictions based on such conduct, it would not be in the best interest of E.P.S. for Appellant to have any possession, access, or other rights, duties, and obligations as a possessory conservator. *See S.A.J.*, 2020 WL 4689361, at *3; *F.A.*, 2017 WL 632913, at *4–5. As such, we hold that the trial court did not abuse its discretion when it denied Appellant any possession of or access to E.P.S. at this time. Accordingly, we overrule Appellant's first issue.

B. *The Trial Court's Division of Property Determinations*

In his second, third, and fifth issues, Appellant challenges the equity of the trial court's division of the parties' community estate and the sufficiency of its findings of fact and conclusions of law. For clarity, we address these issues together. In his second issue, Appellant contends that the trial court abused its discretion when it awarded one hundred percent of the community estate to Appellee. Appellant raises three sub-issues in support of his second issue: (1) an award of one hundred percent of the community estate is not equitable; (2) the decision in *Bradshaw v. Bradshaw* is factually distinguishable and, therefore, should not have been considered by the trial court in its division of property;[3] and (3) an award of one hundred percent of the community estate to Appellee is punitive and cannot be considered to be a division of property. In his third issue, Appellant contends that the trial court abused its discretion when it failed to reconstitute the community estate, which resulted in an inequitable property division. In his fifth issue,

---

[3]In his brief, Appellant cites to *Bradshaw v. Bradshaw*, 187 S.W.2d 688 (Tex. App—Amarillo 1945, no writ). That citation refers to a procedural ruling unrelated to the issues in this case. We believe the case to which Appellant intends to refer is *Bradshaw v. Bradshaw*, 555 S.W.3d 539 (Tex. 2018).

Appellant complains that the trial court failed to consider Appellee's fraud on the community and waste in its findings of fact and conclusions of law.

### 1. *Standard of Review*

In family law cases, the abuse-of-discretion standard overlaps with the traditional sufficiency-of-the-evidence standards of review. *Roberts v. Roberts*, 531 S.W.3d 224, 231 (Tex. App.—San Antonio 2017, pet. denied). Because of this, we engage a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion. *Id.*

Under the first prong, legal and factual sufficiency challenges are not independent reversible grounds of error but are relevant factors to consider in assessing whether the trial court abused its discretion. *Nelson v. Nelson*, 193 S.W.3d 624, 628 (Tex. App.—Eastland 2006, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). Each party in a divorce proceeding has a responsibility to produce evidence of the values of the disputed properties so as to provide the trial court with a basis upon which to make a division. *See Reyes v. Reyes*, 458 S.W.3d 613, 620 (Tex. App.—El Paso 2014, no pet.). The trial court has no independent knowledge of the items that comprise the community estate nor of their worth; therefore, in order to reach a just and right division of the community estate, it is incumbent on the litigants to provide the trial court with the necessary evidence of value. *In re Marriage of Palacios*, 358 S.W.3d 662, 663 (Tex. App.—Amarillo 2009, pet. denied).

Under the second prong, the property division will only be disturbed if the trial court ordered a division that is manifestly unfair and unjust. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Several factors are relevant to the determination of a "just and right" property division, including the parties' (1) disparity in income or earning capacity, (2) capacities and abilities, (3) relative needs and financial

condition, (4) relative fault in ending the marriage, and the benefits the party without fault would have received had the marriage continued, (5) future business prospects, (6) disparity in age, (7) separate estates, (8) education, and (9) the nature of the property to be divided. *Id.* at 698–99. "Generally, in a fault-based divorce, such as here, the trial court may consider the conduct of the errant spouse when making a disproportionate distribution of the marital estate." *Lynch v. Lynch*, 540 S.W.3d 107, 128 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *In re Marriage of C.A.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.)). If the evidence demonstrates a reasonable need for doing so, the trial court may order a disproportionate division of the community estate. *Murff*, 615 S.W.2d at 698–99. However, the division of property should not result in punishment for the spouse who is determined to be at fault; such a division would constitute an abuse of the trial court's discretion. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). The burden is on Appellant to show that the trial court's property division was so disproportionate as to be unjust and unfair. *In re Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 682 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

2. *One Hundred Percent Award of the Marital Estate*

In a decree of divorce, the trial court shall order a division of the parties' community estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. FAM. § 7.001 (West 2020). While it is true that the division of the community estate may not constitute a form of punishment, the trial court's discretion in dividing the estate is broad and should only be corrected on appeal where the disposition of some property is manifestly unjust and unfair. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543–45 (Tex. 2018) (citing *Young*, 609 S.W.2d at 762); *see Wells v. Wells*, 251 S.W.3d 834, 838 (Tex. App.—Eastland 2008, no pet.) (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)).

Although a trial court's division of property need not be equal, it nonetheless must be equitable. *Turner v. Turner*, No. 11-10-00192-CV, 2012 WL 3115155, at *3 (Tex. App.—Eastland July 31, 2012, pet. denied) (citing *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex. App.—El Paso 2007, no pet.)). Generally, in a fault-based divorce such as this one, the trial court may consider the conduct of the errant spouse when making a disproportionate property division. *See C.A.S.*, 405 S.W.3d at 384. For instance, the trial court's finding of adultery or physical abuse can support a disproportionate division. *See Lynch*, 540 S.W.3d at 128.

Moreover, in making a disproportionate division of the community estate, the trial court may also consider the parties' criminal history and convictions; *Bradshaw* illustrates this point. *See Bradshaw*, 555 S.W.3d at 544. Appellant argues that *Bradshaw* is factually distinguishable and should have no bearing on the case before us. We disagree.[4]

In *Bradshaw*, the Texas Supreme Court held that, as a matter of law, it was not just and right to divide the community estate and award an interest in the family home to the husband, who had been convicted of using the home to sexually abuse his stepdaughters. *See id.* We note that the court's holding was limited to the particular circumstances before it: "[the husband] sexually abused his stepdaughters and others repeatedly over a protracted period," "used the family home to commit the abuse," and "was convicted and severely sentenced for the continuous sexual abuse of a child under the age of 14." *Id.* at 545.

There are certainly factual similarities between *Bradshaw* and the case before us. *Cf. Bradshaw*, 555 S.W.3d at 545 ("One can hypothesize a harder case than this

---

[4]The only reference to *Bradshaw* in the record occurred when the parties discussed the substance of the trial court's charge, outside of the jury's presence. At that time, Appellee's trial counsel suggested an inclusion in the charge of an instruction based on *Bradshaw*. The trial court declined to do so and correctly stated that *Bradshaw* pertained to the division of property, which would be determined by the trial court rather than the jury.

14

one—a single incident, weak evidence, an enormous home, no criminal conviction."). Appellant was initially charged with the same offense as the abuser in *Bradshaw*. Nevertheless, Appellant claims that because he pled guilty to and was convicted of the lesser included offense of aggravated sexual assault of a child, the "extreme nature" present in *Bradshaw* cannot be compared to the circumstances of this case. Appellant is mistaken. Although Appellant pled to and was convicted of a lesser offense, the evidence in the record shows that Appellant, as did the husband in *Bradshaw*, repeatedly sexually abused his minor stepdaughter over a protracted period of time. The court in *Bradshaw* considered these facts when it concluded that the trial court's award was not just and right. *See id.* That Appellant was convicted of a slightly different sexual offense against a minor than that of the abuser in *Bradshaw* is of no consequence for purposes of our analysis. The offenses committed by the abuser in *Bradshaw* and by Appellant here are equally vile and heinous.

Further, the record does not support Appellant's contentions that his repeated sexual abuse of his minor stepdaughter did not occur within the family home, that he was never unemployed like the husband in *Bradshaw*, or that the home is allegedly listed in the Midland County Tax Appraisal records in his name only. The issue here is not the same as in *Bradshaw*.[5] For our purposes, it is enough that *Bradshaw* reaffirms that a spouse's criminal conviction is an appropriate consideration for the trial court in making its property division in a fault-based divorce setting. Therefore, we conclude that, to the extent (if any) the trial court relied on *Bradshaw* in making its determinations regarding the division of the parties' community estate, it was not improper for it to do so.

---

[5]There, the court specifically noted that the issue before it was not whether the husband's conviction contributed to the dissolution of the marriage, nor whether awarding the wife the entire interest in the parties' community residence could operate to punish the husband for his fault in the dissolution of the marriage. *Bradshaw*, 555 S.W.3d at 543–44.

In its final divorce decree, and its findings of facts and conclusions of law, the trial court found that awarding Appellee one hundred percent of the community estate was a just, right, and equitable property division, based on its "due regard for the rights of each party, the child of the marriage, fault in the breakup of the marriage and the commission of and conviction of crimes by [Appellant]." In support of this conclusion, the trial court enumerated factual findings that Appellant was guilty of cruel treatment toward Appellee during their marriage and that Appellant had been convicted of aggravated sexual assault of his minor stepdaughter, production of child pornography, and aggravated assault with a deadly weapon against Appellee and the stepdaughter. The trial court also found that the value of the assets of the community estate were established in Appellee's community estate inventory, which included significant debts and liabilities, such as a mortgage debt that exceeded the original loan value and significant credit card debt, all of which Appellee was determined to be responsible for under the trial court's property division.

Turning to Appellant's third sub-issue in support of his second issue, nothing in the Family Code or in existing case law forecloses the possibility that a highly unequal property division may be "just and right." *See* FAM. § 7.001; *see also Bradshaw*, 555 S.W.3d at 551 (Lehrmann, J., dissenting) ("I write separately to reiterate that our precedent does not impose any specific limits on the size or percentage of a community property award."). Rather, the trial court is precluded from considering retribution in determining what is just and right. *Young*, 609 S.W.2d at 762. Our law recognizes numerous other, valid factors that might, in extraordinary cases, support a property division such as the one in this case. *See, e.g.*, *Murff*, 615 S.W.2d at 698. Indeed, and importantly, some of our sister courts have upheld the trial court's property division in cases in which one spouse was awarded one hundred percent of the parties' community estate. *See, e.g.*, *Lynch*, 540 S.W.3d at 128–30; *Taylor v. Taylor*, No. 14-09-00012-CV, 2010 WL 2542549, at

*4 (Tex. App.—Houston [14th Dist.] June 24, 2010, no pet.) (mem. op.); *In re K.N.C.*, 276 S.W.3d 624, 630 (Tex. App.—Dallas 2008, no pet.). As such, Appellant's contention—that a trial court's award of one hundred percent of the community estate to one spouse is per se punitive—has no merit. Accordingly, Appellant's second issue is overruled.

### 3. *Findings of Fact and Conclusions of Law*

In his fifth issue, Appellant complains that the trial court failed to consider the jury's findings of fraud on the community and waste in its findings of fact and conclusions of law. Specifically, Appellant asserts that the trial court did not cite to relevant case law or statutory authority to guide its conclusions in its findings of fact and conclusions of law. Appellant also complains that the trial court failed to recite in its findings that both spouses agreed to remain married after all allegations had been raised and did so for an entire year before Appellant filed for divorce.

Contrary to Appellant's assertion, the trial court did consider fraud on the community and waste in its findings of fact and conclusions of law. The Family Code provides that in a suit for dissolution of marriage, on request by a party, the trial court shall state in its findings of fact and conclusions of law (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented, and (2) the value and amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented. *See* FAM. § 6.711(a). In its findings of fact and conclusions of law, the trial court explicitly adopted Appellee's property inventory, which outlined the value of the community estate's assets and the balances of the community debts.

Appellant's mention of the parties' alleged agreement to remain married is perhaps inadequately briefed. *See* TEX. R. APP. P. 38.1(h), (i). As we explain below, because the trial court's original findings and conclusions were adequate to apprise Appellant of the ultimate issues in the case, Appellant's complaint also impliedly

concerns and relates to "additional" findings of the type contemplated by Rule 298. TEX. R. CIV. P. 298; *see C.A.S.*, 405 S.W.3d at 381 (citing *Moore v. Moore*, 383 S.W.3d 190, 200–01 (Tex. App.—Dallas 2012, pet. denied)). Here, Appellant made no request for additional findings or conclusions, although he had the burden to do so. Therefore, Appellant's complaint presents nothing for our review. *See* TEX. R. APP. P. 33.1(a).

However, even if this issue had been preserved for our review, the lack of a finding on this matter does not show an abuse of discretion. *See C.A.S.*, 405 S.W.3d at 381–82. Only those findings and conclusions that properly and succinctly relate the ultimate findings of fact and conclusions of law that are necessary to apprise the requesting party of information that is adequate for the preparation of their appeal should be recited by the trial court. *Id.* (citing *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied)). "An ultimate fact is one that would have a direct effect on the judgment." *Id.* at 382. "There is no reversible error if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal." *Id.* The controlling issue is whether the circumstances of a particular case require the party to speculate as to the reasons for the trial court's decision. *Id.* Here, the ultimate issue, which Appellant's fifth issue concerns, is the just and right division of the community estate. The trial court's findings of fact and conclusions of law adequately address the fault of the parties and their conduct, the assets and liabilities of the community estate, Appellant's criminal conduct and convictions, and other factors that the trial court considered in determining a just and right division of the estate. Therefore, we conclude that the trial court's findings of fact and conclusions of law are sufficiently specific to allow Appellant to adequately present his complaints on appeal. Accordingly, Appellant's fifth issue is overruled.

### 4. *Reconstitution of the Community Estate*

Finally, in his third issue, Appellant asserts that the trial court erred when it failed to reconstitute the parties' community estate, and that such failure resulted in an inequitable property division. The jury found that Appellee had committed fraud and waste against the community estate, in the amounts of $8,900 and $12,000, respectively. In its findings of fact and conclusions of law, the trial court did not specifically mention any reconstitution of the community estate.

Section 7.009 of the Family Code addresses the division of property when the factfinder has determined that a spouse has committed actual or constructive fraud on the community. FAM. § 7.009; *see Schlueter v. Schlueter*, 975 S.W.2d 584, 585 (Tex. 1998) (reasoning that a wronged spouse "has an adequate remedy for fraud on the community through the 'just and right' property division upon divorce"). Section 7.009(b) requires the trial court to "calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate." FAM. § 7.009(b)(1). "Reconstituted estate" is defined as "the total value of the community estate that would exist if an actual or constructive fraud on the community had not occurred." *Id.* § 7.009(a). The trial court must then "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." *Id.* § 7.009(b)(2). The trial court may also grant any legal or equitable relief necessary to accomplish a just and right division. *Id.* § 7.009(c).

When making a just and right property division, both waste and fraud on the community are aspects the trial court may consider in determining a spouse's dissipation of the community estate. *See Slicker v. Slicker*, 464 S.W.3d 850, 862 (Tex. App.—Dallas 2015, no pet.) (citing *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied)); *Wells*, 251 S.W.3d at 842–43. "Waste occurs when one spouse, dishonestly or purposefully with the intent to

deceive, deprives the community estate of assets to the detriment of the other spouse." *Slicker*, 464 S.W.3d at 861 (citing *Schlueter*, 975 S.W.2d at 589). Fraud on the community is not an independent tort but is instead a remedy for a deprivation of community assets that the trial court should consider in determining a just and right division of the community estate. *See* FAM. § 7.009(b); *Schlueter*, 975 S.W.2d at 588; *see also Chu v. Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008) (distinguishing personal injury claims, which are the separate property of each spouse and can be asserted between spouses as independent torts, from waste, fraudulent transfer, or other damage to community property, which are "claims belonging to the community" and thus "must be included in the trial court's just-and-right division of community property upon divorce").

Evidence was presented to the jury that Appellee purchased a Dodge Challenger with community funds in the amount of $8,900, which she permitted her boyfriend, Todd Lawrence, to drive. Appellee also incurred significant credit card debt—including the approximate balances on each business card, as well as other personal debts—during her marriage to Appellant but after he was incarcerated in January of 2019. These amounts included approximately $9,000 of personal purchases made on a Chase Ink credit card, held by Appellant as a business expense account, for which Appellee was an authorized user; some of the purchases consisted of over $2,000 for VIP tickets to a music festival and over $1,800 for a vacation to a Sandals resort in Florida.

Appellee also charged $5,000 of personal purchases to a Spark Capital One card, held by Appellant as a business expense account, for which Appellee was an authorized user. Appellee used a Harley Davidson credit card to pay for trips to Hurricane Harbor and Six Flags, as well as trips to Mexico and Florida, over the Summer of 2019 after Appellant had been arrested. In addition to these charges, Appellee signed two checks for approximately $11,400 and $8,100 that, although

20

she claimed they were used to transfer cash from one bank account to another, did not appear in any record of her bank account deposits.

Appellee testified that she spent recklessly during the summer of 2019 after Appellant was arrested, and she made some poor financial decisions. She further testified that she had defaulted on the mortgage payments for the couple's house in 2020 and that she had been attempting to sell it.

In its verdict, the jury found that Appellee had (1) committed fraud on the community, which depleted the community estate in the amount of $8,900, and (2) committed waste against Appellant's community property rights, which had depleted the community estate in the amount of $12,000. In its final divorce decree, the trial court found that awarding Appellee "100 percent of the community estate, both assets and debts and considering all circumstances, is a just, right and equitable division[] of the parties' community assets and debts." To that end, the trial court ordered that Appellee was awarded as her sole and separate property, the Dodge Challenger and all debts and liabilities held by the community estate, including all credit card debts.

Consequently, although the trial court's findings of fact and conclusions of law do not explicitly recite that the trial court reconstituted the community estate, the record shows that the sources of Appellee's fraud and waste—the Dodge Challenger and the credit card debts—were retained within the estate. Therefore, any claimed error resulting from the trial court's failure to explicitly reconstitute the community estate is immaterial because the trial court concluded that awarding Appellee one hundred percent of the community estate was a just and right property division. *Slicker*, 464 S.W.3d at 861–62 ("The trial court is afforded broad discretion in dividing the community estate, and we must indulge every presumption in favor of the trial court's proper exercise of discretion." (citing *Schlueter*, 975 S.W.2d at 589)). Moreover, as previously discussed, the record contains no basis

21

for us to hold that the trial court abused its discretion in dividing the community estate. Accordingly, Appellant's third issue is overruled.

C. *Trial Court's Evidentiary Rulings*

In his fourth issue, Appellant contends that the requests for admissions he served on Appellee were deemed admitted and that the trial court abused its discretion when it excluded these admissions from Appellant's summary judgment evidence.

We review a trial court's decision to admit or exclude evidence, as well as its decision to permit or deny the withdrawal of deemed admissions, for an abuse of discretion. *Etheridge v. Opitz*, 580 S.W.3d 167, 175 (Tex. App.—Tyler 2019, pet. dism'd) (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)) (evidentiary decisions); *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 665 (Tex. App.—San Antonio 2014, pet. denied) (citing *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996)) (deemed admissions); *see* TEX. R. CIV. P. 198.3.

Rule 198.1 provides that a party may serve written requests upon another party requesting that the other party admit the truth of any matter that is within the scope of discovery. TEX. R. CIV. P. 198.1. Each matter for which an admission is requested must be stated separately. *Id.* Rule 198.2 provides that a party must respond to the requests within a certain period of time "after service of the request[.]" TEX. R. CIV. P. 198.2(a). If a party fails to timely serve a response to a request for admission, the request is considered admitted without the necessity of a court order. TEX. R. CIV. P. 198.2(c). Rule 198 further provides that, unless the responding party states an objection or asserts a privilege, the responding party must specifically admit or deny the request or explain in detail why they cannot do so. TEX. R. CIV. P. 198.2(b).

Appellant contends that Rule 198.1 does not contemplate the argument of "improper form" as a basis to withdraw admissions. He further contends that because Rule 198.2 provides that requests for admissions may be deemed admitted

without the necessity of a court order, the trial court abused its discretion when it subsequently excluded the deemed admissions that Appellant proffered as evidence at the summary judgment hearing. We disagree.

Appellant filed his requests for admissions in February of 2020. However, Appellant did not properly serve Appellee's trial counsel with the requests for admissions until July 22, 2020. In his requests for admissions, Appellant designated a response deadline of fifty days from the date of service. Fifty days from July 22, 2020, was September 10, 2020. Appellee, through her trial counsel, filed responses objecting to Appellant's requests for admissions on September 3, 2020. Therefore, Appellee timely responded to the requests for admissions. Nevertheless, Appellee later filed a motion to withdraw the admissions. At the hearing on Appellee's motion, the trial court ruled that Appellant's requests for admissions were not deemed admitted.[6]

The trial court's ruling, which is correct, does not constitute an abuse of discretion. As Appellee's trial counsel explained in her motion and at the hearing, the requests for admissions were not properly served on her until July 22, at which time the fifty-day response deadline commenced. *Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex. App.—Amarillo 2000, no pet.) ("[B]efore one has an obligation to answer admissions . . . it is axiomatic that the requests for admissions be served."). Here, Appellee's trial counsel filed timely responses before the expiration of the fifty-day deadline. Because Appellee's trial counsel had no obligation to respond to Appellant's requests under Rule 198.2(a) until she had been properly served, any alleged failure by her to respond until she was properly served could not have caused the requests to be deemed admitted under Rule 198.2(c). *See Ordonez v. Solorio*,

---

[6]At the hearing, Appellant maintained that he filed and served two different requests for admissions, one in March and one in July. Appellee's trial counsel averred that the two documents were the same or, at least, she was *served* in July with the same document that Appellant had filed in February. The record contains only a single request-for-admissions document—the one to which Appellee's trial counsel refers.

480 S.W.3d 56, 61–62 (Tex. App.—El Paso 2015, no pet.). Accordingly, Appellant's fourth issue is overruled.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


March 9, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.